# UNITED STATES DISTRICT COURT
# NORRTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**JOSEPH JIMENEZ,**                CASE NO.

    **Plaintiff,**

v.

**JEFFREY ROSEN, in his Official Capacity as the Acting ATTORNEY GENERAL OF THE UNITED STATES,**

    **Defendant.**
_____/

## COMPLAINT

Plaintiff, JOSEPH JIMENEZ, hereby sues Defendant, JEFFREY ROSEN, in his official capacity as the Acting Attorney General of the United States, and alleges:

## JURISDICTION

1. This is an action brought under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §2000e et seq., 42 U.S.C. §1981 and the Rehabilitation (Rehab) Act, codified at 29 U.S.C. §794 et seq and 42 U.S.C. §1981a. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights claim jurisdiction). Attorneys' fees and costs are also sought under 28 U.S.C. §2412.

2. This is an action involving claims which are, individually, in excess of Seventy- Five Thousand Dollars.

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, JOSEPH JIMENEZ, has been a resident of the State of Florida and employed by Defendant. Plaintiff is a member of a protected class because of his national origin/race and actual or perceived disability and/or record of impairment and because he reported unlawful employment practices and has been retaliated against thereafter.

4. At all times pertinent hereto, Defendant, JEFFREY ROSEN, in his official capacity as the Acting Attorney General of the United States, has been organized and existing under the laws of the United States. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant is Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff began his employment with Defendant on November 28, 2016 and, at all times pertinent to this action, worked as a Medical Officer at Defendant's

Federal Correctional Institution, Tallahassee (FCI Tallahassee) in Leon County, Florida.

7. Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and held to a different standard because of his national origin/race and actual or perceived disability and/or record of impairment and has been the victim of retaliation after reporting the discrimination.

8. Plaintiff was born in 1960 and he was fifty-eight (58) years of age at the time of the events complained of herein.

9. Under the policies of the Bureau of Prisons, Federal Law Enforcement Retirement age is fifty-seven (57) years-old due to the physical rigors of and the nature of the job.

10. Plaintiff had been working as a Medical Officer for Defendant since he was hired. Plaintiff is a Medical Doctor (MD) and was trained on site to provide medical treatment to inmates.

11. Plaintiff's duties as Medical Officer included providing medical care to all seven-hundred to one-thousand inmates who were housed in FCI Tallahassee and providing clinical supervision of medical support staff.

12. However, when Plaintiff turned fifty-eight in July 2018, Defendant "augmented" Plaintiff.

13. Augmentation in the context of FCI Tallahassee means that Defendant places non-correctional employees in the correctional setting to oversee inmates.

14. According to Defendant's age policy, Plaintiff should not have been augmented to a position as a prison guard.

15. In other words, Plaintiff could have continued to work as an MD for Defendant and should not have been augmented to prison guard.

16. In mid-2018, however, Defendant began requiring that Plaintiff perform guard duties.

17. Shortly after Defendant began expecting Plaintiff to perform as prison guard and assigned him to those duties, Plaintiff requested that Defendant not place him in the prison guard position and to allow him to remain in his medical doctor position.

18. Around the time that he was assigned to be a prison guard, Plaintiff wrote a letter to the Warden and the Regional Medical Director stating that his principal duties were as a doctor and that by assigning him as prison guard, he could not perform his duties as a doctor. Plaintiff also filed an EEO complaint against Defendant alleging discrimination on the basis of his disability which charge was later amended.

19. In addition, in his letters, Plaintiff informed the Warden and the Regional Director that he suffered from disabilities that acting as prison guard exacerbated.

20. Plaintiff is a disabled veteran. Due to augmentation to prison guard duties and the attendant stressors, Plaintiff had to be hospitalized for his mental health conditions and had to seek increased outpatient treatment.

21. Neither the Warden nor the Regional Director took action to assist Plaintiff and to prevent his reassignment to prison guard duties.

22. Subsequently, in September 2018, Plaintiff requested reasonable accommodations for his disability namely he requested to be exempted from the guard assignment that he received through augmentation due to his medical conditions of Post-Traumatic Stress Disorder (PTSD), Major Depressive Disorder and Anxiety. He provided a letter dated September 20, 2018 from his psychiatrist, Diana Marshall, in which she described the psychological symptoms that were exacerbated by working augmentation posts.

23. However, rather than relying on Defendant's letter from his psychiatrist who detailed the reason that Plaintiff could not work the augmentation posts because of his mental health condition, Defendant instead relied on a November 2, 2018, letter from Plaintiff's physician who discussed Plaintiff having no physical limitations that would prevent him from working the augmentation posts.

Subsequently, on November 9, 2018, relying improperly on Plaintiff's physical condition as opposed to his psychological condition, Defendant predictably denied his request for a reasonable accommodation of not working the augmentation posts. This accommodation would not have posed an unreasonable hardship on Defendant as there were multiple other employees who could have filled the augmentation posts.

24. After Defendant denied Plaintiff's reasonable accommodations request, it continued to place Plaintiff in the prison guard position.

25. Furthermore, Defendant had sent a request to Plaintiff's physician to complete that omitted nonphysical functions that Plaintiff may have been prevented from performing due to his disability and instead only included physical tasks, completely disregarded nonphysical disabilities.

26. Defendant did not ask Plaintiff's physician to make comments or a determination on Plaintiff's nonphysical disabilities.

27. Two days after Plaintiff received the denial of the reasonable accommodations from Defendant, he was assigned to work a midnight augmentation post guarding male inmates. This resulted in Plaintiff becoming ill and very anxious. Because of the stress from management's treatment of Plaintiff, he had to seek help from the Veteran's crisis line. Plaintiff maintains that assigning him to work an augmentation post so soon after denying him the accommodation request constituted

intentional retaliation for requesting a reasonable accommodation and for filing his charge in addition to ongoing discrimination against him due to his disability.

28. The reason that augmentation is more damaging to Plaintiff than working in the medical unit is because he is required to work alone with inmates but in the medical unit there are other medical personnel in the area.

29. Defendant continued to require Plaintiff to perform prison guard duties and did not provide Plaintiff a prison guard uniform, forcing Plaintiff to oversee the prisoners in a white lab coat.

30. In addition, on or around November 29, 2018, Defendant denied Plaintiff his $34,000 incentive due to his disability, request for an accommodation and/or in retaliation for the EEO complaint previously filed.

31. Defendant also treated Plaintiff less favorably than white Medical Officers.

32. Specifically, but without limitation, Defendant did not require Doctor Sean Yutzi (white psychiatrist) and Doctor Jennifer Rogers (white psychologist), to perform augmentation guard duties. Furthermore, and again without limitation, Defendant did not require other white medical practitioners to perform prison guard duties.

33. Defendant had a practice of treating non-Hispanic employees more favorably than Plaintiff. Specifically, but without limitation, on or around March,

2019, Defendant denied Plaintiff opportunity to be the Clinical Director and instead hired Doctor Li (Chinese male).

34. Defendant also began to call Plaintiff at home and require Plaintiff to come into the facility to perform medical intakes (typically nursing jobs) and began to bypass Plaintiff's authority as a doctor.

35. The actions against Plaintiff lasted for a significant period of time and caused, in part, Plaintiff's forced resignation on or around April 16, 2020. The fact that Plaintiff resigned is not part of this lawsuit.

36. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the statutes referenced above.

## COUNT I
## NATIONAL ORIGIN/RACE DISCRIMINATION

37. Paragraphs 1 through 36 are re-alleged and incorporated herein by reference.

38. This is an action against Defendant for discrimination based upon national origin brought under 42 U.S.C. §2000e et seq. and 42 U.S.C. §1981a.

39. Plaintiff has been the victim of discrimination on the basis of his national origin in that he was treated differently than similarly situated American

born/descended employees of Defendant and has been subject to hostility and poor treatment on the basis, at least in part, of his race.

40. Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

41. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

42. Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

43. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a national origin/race-based nature and in violation of the laws set forth herein.

44. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.

45. The events set forth herein led, at least in part, to adverse action against Plaintiff.

46. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon national origin in violation of 42 U.S.C. §2000e et seq..

47. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive relief.

## COUNT II
## VIOLATION OF THE REHABILITATION ACT
## DISABILITY/ HANDICAP DISCRIMINATION

48. Paragraphs 1 through 37 are incorporated herein by reference. This is an action against Defendant for discrimination based on handicap and/or disability. This count is pled in the alternative.

49. Plaintiff actively or perceptively suffered from a physical or mental disability that substantially limits one or more of Plaintiff's major life activities and/ or Plaintiff has a record of such impairment.

50. Defendant is an "employer" as the term is defined in the relevant statute and was receiving federal funds at the time of its discrimination against Plaintiff.

51. Defendant, solely because of Plaintiff's handicap/disability excluded Plaintiff's participation in, denied Plaintiff the benefits of, or subjected Plaintiff to discrimination under a program or activity as defined in the relevant statute. This was accomplished through Defendant's agents, apparent agents, and employees.

52. Defendant took action against Plaintiff because of Plaintiff's disabling condition, Alternatively, Defendant perceived Plaintiff to be disabled and took action against him as a result thereof and/or refused to reasonably accommodate him.

53. There is no legitimate reason that has been offered by Defendant nor can there be any legitimate reason for the adverse treatment of Plaintiff.

54. Defendant knew or should have known of these conditions as they were open and notorious and well known to Defendant. The adverse treatment of Plaintiff, together with the facts set forth above, were brought to the attention of Defendant and Defendant perpetuated this treatment by condoning the actions and inactions affecting Plaintiff.

55. Defendant harbored ill-motives and intent to cause disparate and retaliatory treatment of Plaintiff.

56. Defendant is responsible for the violations of Plaintiff's rights as set forth herein because it exercised control over the adverse treatment of Plaintiff. In the alternative, Defendant failed to properly supervise its employees thereby causing foreseeable harm to Plaintiff's rights set forth herein.

57. As a direct and proximate cause of Defendant's actions described above, Plaintiff has sustained damages including but not limited to mental, nervous, and emotional injury. Plaintiff has incurred additional damages including lost wages, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, and other damages. These damages have occurred in the past, are occurring at present and will continue in the future. Plaintiff is entitled to injunctive relief.

## COUNT III
## RETALIATION

58. Paragraphs 1 through 37 are re-alleged incorporated herein by reference.

59. This is an action against Defendant for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting her under 42 U.S.C. § 2000e et seq.

60. Defendant is an employer as that term is used under the applicable statutes referenced above.

61. The foregoing unlawful actions by Defendant were purposeful.

62. Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and has been the victim of retaliation thereafter.

63. The events set forth herein have led, at least in part, to adverse actions against Plaintiff.

64. Plaintiff is a member of a protected class because he reported unlawful employment practices and has been the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

65. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, lost opportunities, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to injunctive/equitable relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and

economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f) award Plaintiff interest where appropriate; and

(g) grant such other further relief as being just and proper under the circumstances.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Dated this 24th day of February, 2021.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801

ATTORNEYS FOR PLAINTIFF